1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

| | | |
|---|---|---|
| HENRY YOUKHANA, | ) | 1:04cv6499 OWW DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PLAINTIFF'S SOCIAL |
| v. | ) | SECURITY COMPLAINT |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

9
10
11
12
13
14
15
16
17

## BACKGROUND

18     Plaintiff Henry Youkhana ("Plaintiff") seeks judicial review of a final decision of the

19 Commissioner of Social Security ("Commissioner") regarding his application for supplemental

20 security income pursuant to Title XVI of the Social Security Act.  The matter is currently before

21 the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

22 Dennis L. Beck, United States Magistrate Judge, for findings and recommendation to the District

23 Court.

24

## FACTS AND PRIOR PROCEEDINGS[1]

25     Plaintiff filed his application on December 5, 2002, alleging disability since March 15,

26 2002, due to pain in his arms, hands, back and right leg.  AR 55-58, 62-71.  After being denied

27

28
---
[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page
number.

both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative

Law Judge ("ALJ").  AR 35-39, 41-45, 46.  On July 16, 2003, ALJ William C. Thompson, Jr.,

held a hearing and on January 22, 2004, found that Plaintiff was not disabled.  AR 18-32, 199-

237.  On August 30, 2004, the Appeals Council denied review.  AR 5-9.

Hearing Testimony

ALJ Thompson held a hearing on July 16, 2003, in Stockton, California.  Plaintiff

appeared without counsel.  Vocational expert ("VE") Steven Schmidt appeared and testified.  AR

199.

Prior to taking testimony, the ALJ discussed Plaintiff's decision to represent himself.

Plaintiff indicated that he received the ALJ's mailing about his right to representation and when

asked if he had a representative, Plaintiff stated, "I can talk for myself."  AR 202.  The ALJ then

explained Plaintiff's right to representation and Plaintiff indicated that he understood that right.

AR 202-203.  When Plaintiff decided to represent himself, the ALJ went over some issues,

including the format of the hearing and whether there were any objections to evidence.  AR 203-

205.  The ALJ admitted a physical therapy report that Plaintiff brought to the hearing.  AR 207.

Plaintiff indicated that he would be undergoing tests for his back pain, but did not know when.

AR 207.  The ALJ explained that he could hold the record open to receive additional evidence,

but was reluctant to do so because of the possible delay due to the unknown date of testing.  AR

208.  The ALJ asked if Plaintiff would want to delay his case for these records and he responded,

"Not really.  We can go ahead, I mean, let's not depend on that because I have that pain, constant

pain, you know."  AR 208.

Plaintiff testified that he was 45 years old at the time of the hearing and finished high

school in Iraq.  AR 209.  He came to the United States in 1980 and is a citizen.  AR 209.  He was

5'8" and weighed 255 pounds.  AR 210.  He is married and has five children.  AR 210.

Plaintiff last worked in April 2000.  He tried to work at a used car lot, but was unable to

because of the pain.  AR 211.  He also worked for eight to nine years as a cashier at a

convenience store.  AR 213.

1     The worst problem that prevents him from working is his constant pain due to his

2     arthritis.  AR 217.  He also has trouble sleeping and uses an inhaler when he has trouble

3     breathing.  The inhaler helps.  AR 220.  He gets short of breath in the heat and explained that on

4     a hot day, he uses the inhaler once and looks for a cooler place.  AR 219-220.  Talking a lot also

5     makes him short of breath.  AR 220.

6     On a typical day, he drives his children to school in the morning and sometimes picks

7     them up.  AR 220.  He mostly reads or listens to tapes to pass the time.  AR 221.  He attends

8     church services three times a week.  AR 221.  After half an hour of sitting during the service, he

9     is stiff when he stands and is in pain.  AR 222.  He also visits a friend.  AR 222.

10    He does not have problems walking during the day, but at night when he gets up, he has

11    to first sit for a while in the bed because of his back and his joints.  AR 223.  When he walks, it is

12    with pain.  AR 223.  He uses a cane to help him walk at night.  AR 224.  If he stands for more

13    than 20 minutes, he will be in a lot of pain.  AR 224.  He thought he could sit for 20-30 minutes

14    before becoming stiff and having pain in his lower back.  AR 225.

15    Plaintiff explained that he has carpal tunnel syndrome ("CTS") in his right hand and

16    although his doctors suggested he have an operation, he declined because he was scared it would

17    make his hand worse.  AR 225-226.  He uses a TENS unit for the pain.  With his left hand, he

18    can lift a book, but with pain.  AR 226.

19    Plaintiff also indicated that his right hand has become swollen a few times in the past

20    month and that his right leg gets stuck.  AR 228.  He has also had difficulty with forgetting

21    things.  AR 228.  He takes a painkiller to help him sleep.  AR 228.

22    The ALJ asked the VE to assume a person of Plaintiff's age, education and past work

23    experience.  This person could lift 20 pounds occasionally and 10 pounds frequently, could stand

24    six hours, sit without limitation, and could occasionally bend, stoop, twist, squat, kneel and

25    crawl.  This person could not climb or work at heights, or work around vibration or hazardous

26    moving machinery.  This person could not be in an environment that has an excessive amount of

27    dust, fumes, smoke, or other respiratory irritants.  This person could perform Plaintiff's past

28

relevant work as a driver and convenience store clerk.  This person could also perform assembly jobs, laundry positions and sorting positions.  AR 230-231.

If this person was capable of occasional, but not frequent, forceful gripping, grasping and torquing with the upper extremities, it would have no impact on the available positions.  AR 231.

For the second hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and past work experience.  This person could lift 20 pounds occasionally and 10 pounds frequently.  This person is capable of standing and walking for periods not to exceed one hour at a time, four hours total.  This person could sit for the remainder of the workday if allowed an opportunity to shift position at intervals of about 45-60 minutes.  This person could occasionally bend, stoop, twist, squat, kneel and crawl, but could not climb, work at heights, or work around vibration or hazardous moving machinery.  This person could not be in an environment that has an excessive amount of dust, fumes, smoke, or other respiratory irritants.  This person is capable of occasional, but not frequent, forceful gripping, grasping and torquing with the upper extremities.  The VE testified that this person could perform the unskilled, light positions of garage attendant and cashier.  AR 232.

For the third hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and past work experience.  This person could lift 10 pounds occasionally and could move small objects throughout the workday.  He could stand and walk not more than 30 minutes at a time, not to exceed two hours in a day.  He could sit for the remainder of the day, but not more than 45 to 60 minutes at a time.  This person has the same non-exertional limitations stated above.  This person could not perform any sedentary positions.  AR 234.

If the sitting ability was normal, this person could perform the job of assembly and hand packing.  AR 234-235.

Medical Record

On March 8, 2002, Plaintiff underwent lumbar spine and shoulder x-rays.  The x-rays were normal.  AR 153.

1    _____Plaintiff underwent nerve conduction studies in May 2002.  The testing suggested median

2    nerve neuropathy at the wrist bilaterally, consistent with severe carpal tunnel syndrome

3    bilaterally which is worse on the right than the left.  AR 141-142.

4    _____On November 21, 2002, Plaintiff underwent x-rays and a CT scan of his cervical spine.

5    The x-rays revealed a mild degenerative change of the mid cervical spine.  The CT scan revealed

6    posterior central and right lateral spurring of C5-6 and slight narrowing of the right C5-6

7    intervertebral foramina.  AR 127.

8    On December 17, 2002, Plaintiff saw his primary care giver, physician's assistant Dan

9    Cox.[2]  Mr. Cox indicated that Plaintiff was disabled due to carpal tunnel syndrome and

10   osteoarthritis of the neck.  AR 124.

11   On January 19, 2003, Plaintiff underwent an internal medicine consultive evaluation

12   performed by Thomas Hascall, M.D.  Plaintiff complained of CTS and back and joint pain.

13   Plaintiff told Dr. Hascall that his wife does most of the housework, including laundry, cooking

14   and other chores.  Plaintiff was able to walk without difficulty.  Dr. Hascall noted that he was

15   slightly obese.  Upon examination, Plaintiff had no paravertebral muscle spasms but did have

16   paravertebral muscle tenderness notably in the lumbosacral region.  He has positive Phalen's and

17   Tinel's signs bilaterally.  His muscle strength was 5/5 in the upper and lower extremities, but he

18   had slightly decreased grip strength bilaterally with the left grip slightly stronger than the right.

19   Dr. Hascall diagnosed CTS bilaterally, low back pain of unknown etiology, and shoulder and

20   knee pain of unknown etiology.  He opined that Plaintiff could stand and walk for at least six

21   hours during an eight hour workday and could sit without restriction.  He could lift and carry five

22   pounds frequently and eight to ten pounds occasionally.  He could occasionally bend, stoop, and

23   crouch.  He could only occasionally reach, handle, feel, grasp, or finger, and Dr. Hascall opined

24   that the severity of Plaintiff's CTS could potentially limit him to not be able to perform these

25   actions at all.  Dr. Hascall recommended that Plaintiff undergo updated radiologic testing of his

26   lumbosacral spine, knees and shoulders.  AR 97-102.

27   _____

28        [2] In his decision, the ALJ explained that, giving Plaintiff the benefit of the doubt, it appeared that John
     Castro, M.D., supervised the practice of Mr. Cox.

1    On January 13, 2003, Plaintiff saw Mr. Cox, who diagnosed stable asthma, chronic neck

2    pain and chest pain, not clearly cardiac.  AR 123.

3    On February 7, 2003, Mr. Cox completed a Medical Source Statement and indicated that

4    he last saw Plaintiff on January 13, 2003.[3]  He opined that Plaintiff could occasionally and

5    frequently lift and/or carry 10 pounds, could stand/walk about six hours and sit for about six

6    hours in an eight hour day.  He could climb, balance, stoop, kneel, crouch and crawl frequently,

7    but was limited in reaching, handling, fingering and feeling with both hands.  AR 121.  Mr. Cox

8    indicated that Plaintiff's CTS would interfere with repetitive hand use.  Temperature extremes,

9    chemicals and dust could create breathing problems because of Plaintiff's asthma.  AR 121.

10    On February 28, 2003, State Agency physician Sandra Clancey, M.D., completed a

11    Physical Residual Functional Assessment form.  She opined that Plaintiff could frequently and

12    occasionally lift/carry 10 pounds, stand and/or walk for about six hours in an eight hour workday

13    and sit about six hours in an eight hour workday.  Plaintiff would be limited in handling, with no

14    frequent forceful gripping, grasping or wrist torquing.  He should avoid concentrated exposure to

15    fumes, odors, dusts, gases, poor ventilation, etc.  Dr. Clancey indicated that she considered

16    Plaintiff's subjective symptoms, which she thought were disproportionate to the clinical findings

17    and only partially credible.  She concluded that there was no significant conflict between her

18    opinion and Mr. Cox's opinion.  AR 107-114.

19    Additional treating source medical records were submitted to the Appeals Council after

20    the ALJ issued his decision.  AR 182-195.  The Appeals Council reviewed the evidence and

21    concluded that it did not establish greater work restrictions than those found by the ALJ.  AR 6.

22    ALJ's Finding

23    _____The ALJ determined that Plaintiff had the severe impairments of asthma, CTS and

24    osteoarthritis of the neck.  AR 22.  Plaintiff's allegations were deemed not fully credible.  AR 30.

25    He determined that Plaintiff retained the residual functional capacity ("RFC") to sit for six hours

26    in an eight hour day, stand and walk for thirty minutes at a time for a total of no more than two

27

28    [3] The report was signed by both Mr. Cox and Dr. Castro.  AR 121.

hours in an eight hour day, lift and carry ten pounds frequently, and push or pull similar amounts
of weight on an occasional and frequent basis without problems.  AR 28-29.  He had to avoid
climbing, heights, vibration and hazardous, and moving machinery.  He also had to avoid
excessive exposure to dust, fumes, smoke and other respiratory irritants.  He can occasionally
handle, particularly where forceful gripping, grasping and turning with the upper extremities is
involved.  AR 29.

Given this RFC, the ALJ found Plaintiff capable of performing sedentary work.  AR 29.
Based on the testimony of the VE, the ALJ concluded that Plaintiff could perform the positions
of assembler and handpacker.  He therefore found Plaintiff not disabled.  AR 30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision
to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,
the Court must determine whether the decision of the Commissioner is supported by substantial
evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"
*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.
Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at
401.  The record as a whole must be considered, weighing both the evidence that supports and
the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,
995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must
apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).
This Court must uphold the Commissioner's determination that the claimant is not disabled if the
Secretary applied the proper legal standards, and if the Commissioner's findings are supported by
substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th
Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in
substantial gainful activity due to a medically determinable physical or mental impairment which

has lasted or can be expected to last for a continuous period of not less than 12 months.  42

U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

such severity that he is not only unable to do her previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated

regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4]  Applying this process in this case, the ALJ

found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

disability; (2) has an impairment or a combination of impairments that is considered "severe"

(asthma, CTS and osteoarthritis of the neck) based on the requirements in the Regulations (20

CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which

meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4;

(4) cannot perform his past relevant work; (5) but retains the RFC to perform a significant

number of jobs in the national economy.  AR 30-31.

Plaintiff argues that (1) substantial evidence does not support the ALJ's RFC finding; (2)

the ALJ denied Plaintiff due process regarding his right to representation; and (3) the ALJ failed

to fairly review Plaintiff's testimony.

## DISCUSSION

A.   RFC Finding

Plaintiff faults the ALJ's RFC finding for numerous reasons.  He contends that his RFC

finding, which included the term "forceful," did not match any hypothetical presented to the VE.

In a related argument, Plaintiff asserts that the ALJ improperly rejected the opinion of Dr.

---

[4]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

Hascall.  He further contends that the ALJ ignored Plaintiff's obesity and his hearing impairment in his left ear.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule.  SSR 96-8p.  The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment.  SSR 96-8p.  In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments.  SSR 96-8p.

Here, the ALJ's RFC finding included the following limitations: Plaintiff could sit for six hours in an eight hour day, stand and walk for thirty minutes at a time for a total of no more than two hours in an eight hour day, lift and carry ten pounds frequently, and push or pull similar amounts of weight on an occasional and frequent basis without problems.  AR 28-29.  He had to avoid climbing, heights, vibration and hazardous, moving machinery.  He also had to avoid excessive exposure to dust, fumes, smoke and other respiratory irritants.  He could occasionally handle, particularly where forceful gripping, grasping and turning with the upper extremities is involved.  AR 29.

With regard to Plaintiff's manipulative limitations, he contends that the ALJ inserted the word "forceful," without foundation and without including it in the hypothetical questions posed to the ALJ.  He further contends that in doing so, he improperly adopted the opinion of Dr. Clancy, the nonexamining, nontreating physician, over the opinion of Dr. Hascall, the examining, nontreating physician.

The ALJ may reject the opinion of an examining, but nontreating, physician, in favor of a nonexamining, nontreating physician, when he gives specific, legitimate reasons for doing so and those reasons are supported by substantial evidence.  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

1    Dr. Clancey, who reviewed Plaintiff's medical records, limited Plaintiff to occasional

2    forceful gripping, grasping and wrist torquing.  AR 110.  On the other hand, Dr. Hascall, a

3    consultive examiner, opined that Plaintiff could only occasionally reach, handle, feel, grasp, or

4    finger (apparently whether the activity is forceful or not).  AR 101.

5    In adopting Dr. Clancey's opinion, the ALJ explained that Dr. Hascall imposed

6    manipulative restrictions that were more restrictive than those imposed by Mr. Cox.  AR 27.

7    This explanation is neither legitimate nor supported by substantial evidence.  Mr. Cox simply

8    stated that Plaintiff was limited in reaching, handling, fingering and feeling with both hands.  He

9    also indicated that Plaintiff's CTS would interfere with repetitive hand use.  AR 121.  Given the

10   vagueness of Mr. Cox's opinion, the ALJ cannot legitimately state that Dr. Hascall's restrictions

11   were more restrictive than that of Mr. Cox.  While Mr. Cox indicated that Plaintiff was limited, it

12   is unknown whether his limitation is on an occasional or frequent basis.

13   Moreover, substantial evidence does not support a finding that Plaintiff is occasionally

14   limited in only "forceful" manipulative activities rather than all manipulative activities.  Mr. Cox,

15   his treating source, did not limit Plaintiff's manipulative restrictions to those involving only

16   forceful actions.  Nor did examining physician Dr. Hascall, whose opinion the ALJ wrongfully

17   rejects, find Plaintiff limited in only "forceful" activities.

18   The ALJ's rejection of Dr. Hascall's opinion was in error, therefore rendering his RFC

19   assessment as to Plaintiff's manipulative restriction incorrect.  Remand will be discussed at the

20   end of this opinion.

21   Insofar as Plaintiff alleges that the ALJ failed to consider his obesity, his argument is

22   without merit.  Plaintiff correctly cites SSR 02-1p, which states that obesity must be considered

23   throughout the sequential evaluation process, including when determining an individual's RFC.

24   "The combined effects of obesity with other impairments may be greater than might be expected

25   without obesity."  SSR 02-1p.  The Ninth Circuit recently held that, pursuant to SSR 02-1p, the

26   ALJ must consider obesity in determining RFC based on the information in the case record.

27   *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). However, neither the record nor Plaintiff

28   suggests *any* impairment resulting from his weight, assuming Plaintiff can be considered obese.

An "ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Id.*

Similarly, there is no evidence to suggest that Plaintiff is limited by hearing loss in his left ear. As Respondent points out, although the evidence shows that Plaintiff has decreased auditory acuity and ear irritation due to an infection in October 2002, treatment was successful and his hearing was back to normal within weeks. AR 132, 134, 137, 129. Accordingly, his hearing loss did not last long enough to satisfy the twelve-month duration requirement, nor did it result in any limitations. 20 C.F.R. § 416.909.

B.   Denial of Due Process

Next, Plaintiff argues that the ALJ denied him due process by failing to advise him of the importance of getting updated medical records and of his right to have an attorney or ALJ assist with getting medical records. He further argues, without support, that the ALJ should have further developed the medical evidence.

"Lack of counsel does not affect the validity of the hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings." *Vidal v. Harris*, 637 F.2d 710, 714 (9th Cir.1981). Thus, "the issue is not whether the right to representation was knowingly waived, rather, it is whether, in the absence of representation, the administrative law judge met the heavy burden imposed by *Cox*." *See id*. In *Cox*, the Ninth Circuit held that where a claimant is not represented by counsel, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *See Cox v. Califano,* 587 F.2d 988, 991 (9th Cir.1978) (internal quotation omitted). In such a situation, the ALJ "must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *See id.* (internal quotation omitted).

Prior to taking testimony, the ALJ discussed Plaintiff's decision to represent himself. Plaintiff indicated that he received the ALJ's mailing about his right to representation and when asked if he had a representative, Plaintiff stated, "I can talk for myself." AR 202. The ALJ then explained Plaintiff's right to representation and Plaintiff indicated that he understood that right.

AR 202-203.  When Plaintiff decided to represent himself, the ALJ went over some issues, including the format of the hearing and whether there were any objections to evidence.  AR 203-205.  The ALJ admitted a physical therapy report that Plaintiff brought to the hearing.  AR 207.  Plaintiff indicated that he would be undergoing tests for his back pain, but did not know when.  AR 207.  The ALJ explained that he could hold the record open to receive additional evidence, but was reluctant to do so because of the possible delay due to the unknown date of testing.  AR 208.  The ALJ asked if Plaintiff would want to delay his case for these records and he responded, "Not really.  We can go ahead, I mean, let's not depend on that because I have that pain, constant pain, you know."  AR 208.

Given this thorough discussion, Plaintiff's argument seems somewhat disingenuous.  He repeatedly stated that he understood his right to counsel, but chose to proceed on his own.  The ALJ offered Plaintiff the opportunity to object to evidence and accepted Plaintiff's physical therapy report.  The ALJ also reluctantly offered to hold the record open or even delay the proceedings pending the outcome of Plaintiff's back exam, but Plaintiff decided to continue.  AR 208.

Insofar as Plaintiff contends that the ALJ should have further developed the evidence, Plaintiff is reminded that it is Plaintiff's burden to produce full and complete medical records, not the Commissioner's.  *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).  However, when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence, the ALJ has a duty to develop the record.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001).  The ALJ may discharge this duty in one of several ways, including subpoenaing claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.  *Id.*

Insofar as Plaintiff contends that the ALJ should have requested additional medical records not previously submitted, his contention fails.  Plaintiff contends that "material records" were missing and submits "Exhibit A," attached to his opening brief.  Exhibit A consists of treatment notes from August 2003 to May 14, 2004.  However, these records were submitted either to the ALJ or to the Appeals Council.  AR 123, 182-186, 188-195.  Moreover, many of the

1   records relate to treatment received after the ALJ's opinion and are therefore simply not relevant

2   to his decision.

3        However, with respect to the ALJ's use of Mr. Cox's description of Plaintiff's

4   manipulative limitations discussed above, Mr. Cox's opinion was simply too vague to allow the

5   ALJ to evaluate the evidence.  In evaluating the evidence on remand, the ALJ should seek

6   clarification of Mr. Cox's manipulative limitations.

7   C.   Plaintiff's Testimony

8        Finally, Plaintiff contends that the ALJ failed to fairly review his testimony and give

9   adequate reasons for rejecting Plaintiff's testimony under SSR 96-7p.

10       The ALJ is required to make specific findings assessing the credibility of plaintiff's

11   subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  In rejecting

12   the complainant's testimony, "the ALJ must identify what testimony is not credible and what

13   evidence undermines the claimant's complaints."  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

14   1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.

15   1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

16   severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

17   with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

18   discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).  "The

19   ALJ may consider at least the following factors when weighing the claimant's credibility:

20   '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

21   between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

22   testimony from physicians and third parties concerning the nature, severity, and effect of the

23   symptoms of which [claimant] complains."  *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789,

24   792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in the

25   record, we may not engage in second-guessing."  *Id.*

26       First, Plaintiff incorrectly argues that SSR 96-7p sets forth a mandatory procedure

27   through which an ALJ must assess the claimant's credibility.  While courts give the SSRs some

28

1    deference, they do not have the force of law.  *Holohan v. Massanari,* 246 F.3d 1195, 1203, n. 1

2    (9th Cir. 2001).

3        Second, the ALJ made findings sufficient to allow the Court to determine that he did not

4    arbitrarily reject Plaintiff's testimony.  The ALJ explained that the medical record did not contain

5    evidence to support Plaintiff's pain.  He cited normal lumbar spine, shoulder, and elbow x-rays

6    and negative rheumatoid arthritis screens.  AR 24.  While cervical spine x-rays showed mild

7    degenerative changes and a EMG showed severe CTS, these reports do not support Plaintiff's

8    allegations of disabling levels of back and joint pain.  AR 24.  Despite Plaintiff's claims to the

9    contrary, the record simply did not support Plaintiff's allegations of joint and back pain.  *Rollins*

10   *v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (whether subjective pain testimony is

11   corroborated by objective medical evidence is a relevant factor in ALJ's credibility analysis).

12       The ALJ next noted that Plaintiff did not undergo aggressive treatment and was not given

13   anything for pain other than ibuprofen.  AR 24.  *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir.

14   1995) (ALJ may consider infrequent medical treatment or minimal use of pain medication).

15   Plaintiff argues that this was an error, and points out that he takes Tramadol and uses ice and

16   heat.  Certainly, ice and heat are conservative pain treatments.  While Plaintiff did take Tramadol

17   for pain, he did not start this medication until 2003.  The ALJ's statement that he was treated

18   only with ibuprofen appears to relate to the period prior to December 2002, during which

19   Plaintiff was seen at approximately six month intervals by Mr. Cox.  Even assuming the ALJ

20   mistakenly failed to include the Tramadol, it does not change the relatively conservative nature of

21   Plaintiff's treatment.

22       The ALJ next noted that there was "not much of a record of medical treatment until after

23   the claimant filed for disability benefits in December 2002."  AR 24.  *Moncada*, 60 F.3d at 524.

24   He further noted that Plaintiff's CTS, the one impairment supported by objective medical

25   evidence, has remained largely untreated because Plaintiff refused to undergo the recommended

26   carpal tunnel release surgery or steroid injection therapy.  The ALJ also noted that Plaintiff was

27   referred for pain management, but there is no evidence that he took advantage of the referral.  AR

28

14

1   24. *Bunnell*, 947 F.2d at 346 (holding that "unexplained, or inadequately explained, failure to

2   seek treatment or follow a prescribed course of treatment" is relevant to credibility finding).

3        Finally, the ALJ explained that Plaintiff's own reports of his daily activities and his

4   admitted ability to perform most self-care activities are indicative of a capacity greater than he

5   alleges.  AR 24.  Although Plaintiff characterizes his activities as "limited and pain restricted,"

6   the ALJ properly considered Plaintiff's reported daily activities in assessing his credibility.

7   *Thomas,* 278 F.3d at 958.

8   D.    Remand

9        Section 405(g) of Title 42 of the United States Code provides: "the court shall have the

10  power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

11  or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

12  In social security cases, the decision to remand to the Commissioner for further proceedings or

13  simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d

14  599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original

15  administrative proceedings, a social security case should be remanded.  Where, however, a

16  rehearing would simply delay receipt of benefits, reversal and an award of benefits is

17  appropriate."  *Id.* (citation omitted).

18       The Court finds that the errors can be addressed on remand.  The Court has concluded

19  that the ALJ improperly rejected the opinion of Dr. Hascall and therefore formed an incorrect

20  hypothetical.  The Court recommends that the action be remanded to reconsider Plaintiff's

21  manipulative restrictions in light of Dr. Hascall's findings and Mr. Cox's clarification.

**RECOMMENDATION**

23       Based on the foregoing, the Court recommends that the case be REMANDED to the ALJ

24  for further proceedings consistent with this opinion.

25       These findings and recommendations will be submitted to the Honorable Oliver W.

26  Wanger, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after

27  being served with these findings and recommendations, the parties may file written objections

28  with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

1   and Recommendations."  The parties are advised that failure to file objections within the

2   specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

3   F.2d 1153 (9th Cir. 1991).

4       IT IS SO ORDERED.

5   **Dated:**   **October 27, 2005**                          **/s/ Dennis L. Beck**

    3b142a                                    UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28